Sheldon and others, executors, &c. *vs.* Peck and others.

In an action of trover for a quantity of wheat, the following instrument, sign-
ed by the defendants, was given in evidence by the plaintiffs: "Received,
Oct. 19, 1847, from —— by D. Cary —— forty-three bushels $\frac{47}{60}$ bushels
wheat at —— per bushel." *Held*, that the instrument was so ambiguous
as not to import a contract, of any description, and hence that it stood on
the same footing with all other mere receipts, and that parol evidence was
properly admitted, to show that the transaction was a *bailment* and not a
*sale.*

This was an action of trover, for a quantity of wheat alledged
to have belonged to Daniel Cary, the plaintiffs' testator, and to
have come to the possession of the defendants during his life.
The declaration contained four counts; in two of which it was
alledged that the defendants converted and disposed of said
wheat to their own use, during the life of the said Daniel Cary;
and in the other two counts, it was alledged that the conversion
was after the death of Cary. The defendants pleaded not guilty.
The trial came on at the Monroe circuit, in December, 1848,
before Hoyt, justice. It was proved upon the trial that the
defendants were, in the fall of 1847, and had been for several
years previous, partners, at the village of Brockport, in Monroe
county, engaged in the produce business, and kept a warehouse
at Brockport, under the name and style of "Kingsbury, Peck
& Co." Elisha S. Scofield, a witness for the plaintiffs, testified
that he resided, in October and November, 1847, in Clarkson,
with the said Daniel Cary, who died about the first of December,
1847, and had been confined to his house near two months prior
to his death. That he, the said Cary, was a farmer, and raised
a crop of wheat that year. That he, the witness, was in the
employment of said Cary, on his farm, and drew the crop of
wheat to Brockport, for him. That he delivered the wheat to
the defendants, and took fifteen receipts for the same. The
receipts were then produced in court; the first of which was in
the words and figures following:

"*Received*, Oct. 19, 1847, *from* —— *by* D. Cary, —— forty-
three *bushels* $\frac{47}{60}$ *bushels wheat*, at —— *per bushel.*

KINGSBURY, PECK & Co.

Pr. M. Preston."

The italicized words in said receipt being printed, the others written.    Two other of the said receipts were dated October 21st, and October 23d, and were in the same form, printed and written, excepting the quantity of wheat stated in them; and the other twelve were in similar form, printed and written, except that they stated the wheat to be received from Daniel Cary.    On the back of the receipt dated October 27th, which was for 35 bushels and 43 pounds of wheat, was the following indorsement, in the handwriting of one of the defendants : "Received on the within thirty dollars.    Oct. 27, '47."    The whole quantity of wheat specified in the receipts, was 624 bushels and nine pounds. The date of the first receipt was the 19th of October, and of the last, the 6th of November, 1847.    After the receipts were read in evidence, the plaintiffs' counsel offered to show the instructions given by Cary to the witness, to make a specific contract with the defendants to store the wheat; and that he did make such contract with them when he drew the first load.    This was objected to by the defendants' counsel; on the ground that the receipts showed that the wheat was sold to the defendants, and not stored; and that parol evidence was not competent, except to show the price or terms of the sale.    The judge overruled the objection, and decided to receive the evidence; inasmuch as the receipts, on the face of them, did not necessarily show a sale of the wheat.    To which the defendants' counsel excepted.    The witness then testified that Mr. Cary told him to take a load of wheat and go to Brockport, and see Mr. Peck, and see if he would take his crop of wheat in store; and put it in a bin by itself.    That he did go to Brockport with a load of wheat; called on Chauncey Peck, one of the defendants, and communicated Mr. Cary's message.    That Peck asked him how much he thought there would be of the wheat, and the witness replied he thought there would be seven or eight hundred bushels. Peck then told the witness he would take the wheat in store, as requested; and the witness thereupon, by directions of Peck, drove the load round to the storehouse, where a Mr. Preston took in the load and gave him the first of the receipts.    There was no change of the bargain subsequently; and all of the wheat

Sheldon *v.* Peck.

was received under that bargain. In reference to the $30 in-dorsed on the receipt of October 27th, Cary told the witness to sell that load of wheat; to see Peck and tell him he wanted to raise $30, and if he, Peck, wanted it, he might have it, and give a receipt for the remainder of the load. That the witness did let Peck have the load, and he let the witness have the $30, and gave the receipt, and the money was indorsed on it. Seve-ral other witnesses were called by the plaintiffs to show the contract to have been one for storing the wheat, and witnesses on the part of the defendants were introduced to rebut such evidence. The plaintiffs also proved a demand of the wheat in the lifetime of Cary, and the value of the wheat. The jury returned a ver-dict in favor of the plaintiffs for $812,44.

*H. R. Selden,* for the defendants, moved to set aside the ver-dict, and for a new trial. He contended that the receipts intro-duced in evidence were *contracts of sale* of the wheat, the price only being left undetermined. He cited *Jeffrey* v. *Walton,* (1 *Stark. Rep.* 267; 2 *Eng. Com. L.* 385;) 2 *Cowen & Hill's Notes, pp.* 1472, 1388, 1389, 1471; *Dawson* v. *Kittle,* (4 *Hill,* 108, 109.)

*Jerome Fuller,* for the plaintiffs, insisted that the receipts in question were not in terms, or upon their face, a contract. That they were ambiguous, and open to explanation by parol proof. That if not ambiguous, they were mere receipts. He cited 1 *Cowen & Hill's Notes,* 214, *&c.* and cases there cited; *Mc-Kinstry* v. *Pearsall,* (3 *John.* 319;) *Dawson* v. *Kittle,* (4 *Hill,* 107;) *Goodyear* v. *Ogden,* (*Id.* 104.)

The opinion of the court was delivered by

WELLES, J. The only question in this case, is whether the receipts given in evidence imported a contract of any description. The defendants' counsel claims that they imported a contract of sale, and that the justice before whom the cause was tried, com-mitted an error in admitting parol evidence to show that the transaction was a bailment.

Sheldon *v.* Peck.

If the receipts contained any operative words which amounted to an agreement or contract of any description, then clearly, it was not competent for either party to give parol evidence to contradict the legal import of such words. No authorities need be referred to, in support of so plain a proposition. The receipts were made by filling up printed blanks, which had probably been prepared by the defendants to use on taking in wheat at their mill or store house, upon purchase. They contemplated a price to be inserted; for a blank was left between the words "*at*" and "*per bushel.*" But in those used in this transaction, the blank for the price was not filled up, and the clause relating to the price seems not to have been used. I think, therefore, it was abandoned, and the whole clause should be rejected, in giving a construction to the instruments. If they are not to be treated as surplusage, or as having been left in by inadvertence, but as standing there, an effective expression, I admit they would import a sale, at a price not agreed upon, but to be fixed thereafter, either by the parties, or be regulated by the market at the time of delivery. If the receipts had contained words simply importing a sale, without any language contemplating a price, such for example as "bought of" the testator so many bushels of wheat, a sale would have been implied, and the price could, in such case, be ascertained by parol evidence. But here is evidence on the face of the receipts that the idea of a sale was not entertained by the parties, or had been abandoned. The only words claimed as evidence of a sale, relate to price, and they are so defective as to express no distinct idea whatever— and are totally inoperative. If this be so, they stand on the same footing with all other mere receipts, which are always open to explanation or even contradiction; and the parol evidence was properly admitted, to show that the transaction was a bailment and not a sale. It follows that the motion for a new trial should be denied.

Ordered accordingly.

[Monroe General Term, September 5, 1850. *Welles, Selden* and *Johnson,* Justices.]